# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **B.C., M.E.-1, and N.E.**

**No. 18-1095** (Kanawha County 17-JA-376, 17-JA-448, and 17-JA-449)


# MEMORANDUM DECISION


Petitioner Father M.E.-2, by counsel J. Rudy Martin, appeals the Circuit Court of Kanawha County's November 13, 2018, order terminating his parental rights to B.C., M.E.-1, and N.E.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Matthew Smith, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in considering the child's in camera interview, denying petitioner's motion for a post-adjudicatory improvement period, and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 12, 2017, the DHHR filed an abuse and neglect petition alleging that B.C.'s mother was involved in a dispute about drugs during which gunshots were fired at a vehicle when the child was inside. The DHHR also alleged that a Child Protective Services ("CPS") worker interviewed the child regarding the shooting incident. During the interview, the child disclosed that he feared petitioner and never wanted to see him again. The child stated that petitioner had been arrested several times and in one of his mugshots had "white stuff on his top lip." Further, the child disclosed that he witnessed domestic violence between petitioner and petitioner's ex-

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, they will be referred to as M.E.-1 and M.E.-2, respectively, throughout this memorandum decision.

girlfriend. The DHHR also alleged that petitioner had a history of substance abuse and domestic violence. On September 22, 2017, the circuit court held a preliminary hearing during which the circuit court denied petitioner's motion for visitation with the children. The circuit court granted the DHHR's motion for an in camera interview to be conducted for adjudicatory purposes.[2] In October of 2017, the DHHR filed an amended petition to add petitioner's other children, M.E. and N.E., as infant respondents.[3]

In January of 2018, petitioner submitted to a psychological evaluation. During the evaluation, petitioner advised the psychologist that he never had custody of any of his children, but did have visits with them every other weekend. However, petitioner stated that he had not seen any of his children in approximately three years. Nevertheless, petitioner advised the psychologist that "he feels that he would have no trouble parenting [B.C.] or his other children." He also stated that the children "adore" him and listen to him. He said that he "would not do anything different than he has in the past, because there is nothing he should do different." Petitioner then discussed the faults of CPS and society in general. According to the evaluation, petitioner never acknowledged any wrongdoing that led to the filing of the abuse and neglect petition and denied any history of substance abuse. However, when asked specifically about marijuana, he admitted to using the substance as recently as a few weeks prior to the evaluation. When asked, he also acknowledged the revocation of his driver's license and arrest for driving under the influence of alcohol. Petitioner further denied any anger management issues. The psychologist noted in the evaluation that petitioner focused all of his attention on blaming others and failed to take responsibility for his own behavior.

On March 29, 2018, the circuit court held an adjudicatory hearing. Petitioner did not appear, but was represented by counsel. The DHHR called the psychologist to testify regarding petitioner's evaluation. She stated that, based upon the evaluation, she diagnosed petitioner with "child neglect, child psychological abuse and unspecified personality disorder with narcissistic and antisocial traits." When explaining the reasoning for her diagnosis of a narcissistic disorder, the psychologist indicated that petitioner bragged that he "was sleeping around and got three women pregnant." She further explained that petitioner expressed no concern for the outcome of his behavior and the effects on the women and the children involved. She testified that petitioner failed to provide a safe home for his children and exposed them to domestic violence. She noted that during the evaluation, petitioner failed to admit that he engaged in any acts of domestic violence. The psychologist also testified that petitioner had been participating in therapeutic services for a year, but had only made a slight improvement and failed to apply what he was learning to real life situations. The psychologist opined that petitioner's potential for improved parenting was "extremely poor" and that he would not be able to effectively parent his children even if he were granted an improvement period. Following the conclusion of the psychologist's testimony, the circuit court continued the adjudicatory hearing.

---

[2]It is unclear from the record when the circuit court conducted this interview.

[3]Both of those children were in the custody of their respective nonabusing mothers when the petition was filed.

On May 24, 2018, the circuit court concluded the adjudicatory hearing. The DHHR moved for the circuit court to consider all prior evidence submitted, including B.C.'s in camera interview and the psychological evaluation. The circuit court granted the DHHR's motion and noted petitioner's objections. Based upon the evidence presented and the arguments of the parties, the circuit court found that petitioner had substance abuse issues that prevented him from being an appropriate parent, engaged in domestic violence in the children's presence, lacked insight, and did not take any accountability for his actions. The circuit court adjudicated petitioner as an abusing parent and denied his motion for a post-adjudicatory improvement period.

On October 31, 2018, the circuit court held a dispositional hearing. A DHHR employee testified that petitioner failed to acknowledge his history of substance abuse and domestic violence. The DHHR employee recommended that the circuit court terminate petitioner's parental rights. Next, petitioner testified on his own behalf. He explained that he was prohibited from seeing the children following family court and domestic violence proceedings approximately three years prior. When asked if there were issues that he could address during an improvement period, petitioner responded, "[w]hatever you guys are asking or you say my problem is. I hope I can do it, I hope I can fix it." Following petitioner's testimony, the parties presented their arguments.

In its dispositional order, the circuit court found that petitioner "is violent and has anger control issues . . . [and] has an extensive criminal history related to domestic violence." The circuit court noted that petitioner was "diagnosed with severe mental health and psychological issues such as unspecified personality disorder with traits of [narcissism] and antisocial behavior; child psychological abuse and child neglect." The circuit court also noted that, according to the psychologist, petitioner's potential for improved parenting was "extremely poor." Further, the circuit court found that petitioner failed to take any responsibility for his actions and "blames others for his deficiencies." The circuit court also found that petitioner had not seen his children for three years due to domestic violence and that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Additionally, the circuit court found that the termination of petitioner's parental rights was necessary for the children's welfare. The circuit court terminated petitioner's parental rights in its November 13, 2018, dispositional order.[4] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left

[4]B.C.'s mother's parental rights were also terminated. According to respondents, the permanency plan for the child is adoption in his current foster placement. M.E.'s mother and N.E.'s mother are both nonabusing parents. Those children will remain in the custody of their respective mothers.

with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in considering B.C.'s in camera interview for purposes of adjudication and disposition because he was not permitted to attend the interview and because his counsel did not receive a copy of the transcript. Rule 8(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings provides that the circuit court "may conduct in camera interviews of a minor child, outside the presence of the parent(s)" and that "[u]nder exceptional circumstances, the court may elect not to make the recording available to the attorneys but must place the basis for a finding of exceptional circumstances on the record."

Based upon a review of the record, the circuit court did not specifically make a finding of "exceptional circumstances" to prevent counsel from having access to the transcript of the in camera interview. However, the record shows that the children feared petitioner and did not want any contact with him and the circuit court took precautions during the proceedings to protect the children. Specifically, the circuit court ordered that the transcript from the in camera interview be sealed. However, the circuit court allowed petitioner to review B.C.'s psychological evaluation, although it ordered that a protective order be entered regarding the evaluation and prohibited petitioner from being provided a copy of the evaluation. The in camera interview was not the only evidence the circuit court considered in its decision to adjudicate petitioner as an abusing parent and to terminate his parental rights. The circuit court had the opportunity to review petitioner's psychological evaluation and heard testimony from the psychologist during the adjudicatory hearing. Petitioner testified on his own behalf during the dispositional hearing. Therefore, we find no error in the circuit court's consideration of the child's in camera interview.

Moreover, we have held that

"[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). For the reasons discussed above, we find that the circuit court's failure to make a specific finding of "exceptional circumstances" to prevent counsel from having access to the transcript of B.C.'s in camera interview does not constitute a substantial disregard of the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes to warrant vacating and remanding the matter. Thus, petitioner is entitled to no relief.

Next, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. In support, petitioner asserts that he was not given an "opportunity to address parental shortcomings." We disagree. West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." We have held that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). We have also noted that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child[ren]'s expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)).

The record shows that petitioner has a history of domestic violence, anger issues, and substance abuse issues. However, petitioner failed to acknowledge any of those problems. The psychological evaluation reported that petitioner expressed no concern for how his behavior effected his children. During the evaluation, he explained that, despite the fact that he had not seen the children in approximately three years, he would have no problem parenting them. He said that he "would not do anything different than he has in the past, because there is nothing he should do different." The psychological evaluation reported that petitioner initially denied all substance abuse, but when asked specifically about marijuana, petitioner admitted to recent use of the substance. The psychologist testified that petitioner's prognosis for parental improvement was "extremely poor." Petitioner denied any prior domestic violence issues, despite evidence that showed he had a long history of domestic violence. Further, while petitioner contends that he was "showing improvement as a result of his [f]amily court ordered therapy sessions," the record shows that petitioner made only a slight improvement after a year of therapy and was unable to implement what he learned. Due to petitioner's failure to acknowledge the conditions of abuse and neglect, it is clear that granting him a post-adjudicatory improvement period would have been futile. Therefore, we find no error in the circuit court's denial of petitioner's motion for a post-adjudicatory improvement period.

Petitioner also argues that the circuit court erred in terminating his parental rights. He admits that he has never had custody of his children and "only wishes to be allowed to take the necessary steps to keep his parental rights and be allowed visitation with his children." We do not find petitioner's argument persuasive. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent has

not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

The evidence discussed above also supports the termination of petitioner's parental rights. Because petitioner failed to acknowledge the conditions of abuse and neglect or take responsibility for his actions, it is clear that the issues could not be remedied. Specifically, petitioner denied any history of domestic violence, despite evidence to support the same. The circuit court found that petitioner "denies any issues" and "blames others for his deficiencies." Based on this evidence, it is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of his parental rights was in the children's best interests. Further, while petitioner argues that the circuit court should have granted him a less-restrictive dispositional alternative, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 13, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: June 12, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

6